FILED
17 AUG -1 PM 3: 21
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: AJS   DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUE-KONG SHUE,<br><br>Plaintiff,<br><br>v.<br><br>OPTIMER PHARMACEUTICALS, INC., a Delaware Corporation, et. al.,<br><br>Defendants. | Case No.: 3:16-cv-02566-BEN-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; and**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL** |

Before the Court is the motion for partial dismissal of Plaintiff's First Amended Complaint (Docket No. 7, "FAC") filed by Defendants Optimer Pharmaceuticals, LLC ("Optimer"), Cubist Pharmaceuticals, LLC ("Cubist"), and Merck & Co., Inc. ("Merck," collectively "Defendants"). (Docket No. 10, "Defs.' Mot. to Dismiss.") The Motion is fully briefed. The Court finds the motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, Defendants' Motion is **GRANTED**.

///
///

# BACKGROUND[1]

This action arises out of the alleged wrongful termination of Plaintiff Youe-Kong Shue by Defendant Optimer Pharmaceuticals, Inc. ("Optimer Inc.").[2] Optimer Inc. was founded in or about 1998, and was at all relevant times "a publicly-owned American company which focuses on the clinical development and commercialization of DIFICID, a new drug product to treat intestinal diseases caused by bacteria." (FAC ¶¶ 15-16.)

In 2002, Optimer Inc. "formed OBI Pharma ('OBI'), a registered Taiwanese company, and a wholly-owned subsidiary of [Optimer Inc.]." (*Id.* ¶ 23.) "OBI's mission was to expand [Optimer Inc.'s] global reach and develop the OPT 822/821 Compound." (*Id.*) Also in 2002, Optimer Inc. assigned its commercial rights to the OPT 822/821 Compound ("the Compound") in several Asian countries to OBI. (*Id.* ¶ 25.) In 2009, Optimer Inc. granted worldwide commercial rights to the Compound to OBI in an effort to attract new OBI investors. (*Id.* ¶ 26.) Optimer Inc. subsequently sold 40% of its shares in OBI to new and existing investors. (*Id.*)

Plaintiff was employed by Optimer Inc. from 2000-2012, first as the Director of Chemistry and later as the Vice-President of Clinical Development. (*Id.* ¶¶ 14-15.) In 2005, Optimer Inc. appointed Plaintiff as OBI's acting CEO. (*Id.* ¶ 24.) In 2009, Optimer Inc. officially appointed Plaintiff as OBI's President and CEO, and Plaintiff was elected as a director to the OBI Board of Directors ("BOD"). (*Id.*) Concurrently with these appointments and election, Plaintiff also worked as Vice-President of Clinical Development at Optimer Inc. (*Id.*) During his employment with Optimer Inc., Plaintiff received positive performance reviews. (*Id.* ¶ 29.)

---

[1] The following overview of the facts are drawn from the allegations of Plaintiffs' FAC (Docket No. 7) for purposes of evaluating the instant motion to dismiss. The Court is not making findings of fact.

[2] The FAC does not allege any conduct by the other named defendants. Rather, the other named defendants are alleged to be "successors in interest to" or "continuations of" Optimer Inc., its parent, or other members of its corporate family.

In May 2010, Optimer Inc. hired Pedro Lichtinger as CEO of Optimer Inc., who also became a member of its BOD. (*Id.* ¶ 28.) Around the end of 2010 or the beginning of 2011, Mr. Lichtinger made a recommendation to Optimer Inc. that it should bring in Henry McKinnell, Ph.D. as a member of its BOD. In February 2011, Dr. McKinnell became an independent director member of Optimer Inc.'s BOD. "Dr. McKinnell independently decided it had been a mistake for [Optimer Inc.] to grant its worldwide commercial rights to [the Compound]" to OBI because the Compound "was beginning to show the potential to become a successful cancer drug." (*Id.* ¶ 32.) "Dr. McKinnell was determined to take back the rights to [the Compound] from OBI. No one knew the extent to which Dr. McKinnell and his protégé, Mr. Lichtinger, were willing to go to accomplish this goal." (*Id.*)

In the summer of 2011, Optimer Inc.'s BOD voted to have OBI "go public," i.e. become a public company, "in order to relieve [Optimer Inc.] of the financial burden of supporting OBI and [the Compound's] development costs." (*Id.* ¶¶ 33, 41.) "In September 2011, Plaintiff was awarded a written grant of 600,000 shares of OBI common stock 'in consideration of [his] services to the company' that would be payable within 30 days of OBI's IPO[3] date." (*Id.* ¶ 42.) However, Optimer Inc. "never intended to perform on this promise" or only intended to perform if Plaintiff did not "resist [Optimer Inc.'s] attempt to obtain valuable OBI rights without adequate consideration." (*Id.* ¶ 43.)

In October 2011, "OBI initiated the process of becoming a publicly-owned Taiwanese entity." (*Id.* ¶ 34.) Under Taiwanese law, in order for OBI to go public, Optimer Inc. had to reduce its ownership in OBI to less than 50%. (*Id.*) Optimer Inc. and

---

[3] "IPO" is an acronym for "initial public offering," which is "a type of public offering in which shares of a company usually are sold to institutional investors that in turn, sell to the general public, on a securities exchange, for the first time. Through this process, a privately held company transforms into a public company." *Initial Public Offering*, Wikipedia.com, https://en.wikipedia.org/wiki/Initial_public_offering (last visited July 19, 2017).

OBI agreed Optimer Inc. would reduce its ownership in OBI to 43%. (*Id.*) At or about the same time, Mr. Lichtinger approached Plaintiff and requested a right of first refusal ("ROFR") to the worldwide commercial rights to the Compound for Optimer Inc. (*Id.* ¶ 45.) Plaintiff did not believe this was in the best interests of the OBI shareholders and proposed different terms. (*Id.*) During this encounter, Mr. Lichtinger "expressed dissatisfaction" with Plaintiff's attempt to negotiate different terms for a ROFR for Optimer Inc. (*Id.*)

In December 2011, Plaintiff presented Optimer Inc.'s "draft ROFR" to OBI's BOD. (*Id.* ¶ 48.) The OBI BOD modified and clarified the draft, including reducing Optimer Inc.'s proposed duration of a ten-year ROFR to a four-year ROFR. (*Id.*)

In January 2012, Plaintiff received an email from Mr. Lichtinger, wherein Mr. Lichtinger stated:

> I am highly disappointed with the OBI 'negotiating' tactics and lack of sensitivity to the [Optimer Inc.] shareholders interest [sic] . . . the [ROFR] is an absolute must that is not negotiable . . . if necessary we are prepared to take a more aggressive position including revisiting the IPO process and the overall OBI strategy at the [Optimer Inc.] Board level. We expect the contract to be signed prior to the dilution of [Optimer Inc.'s] shareholder position and I encourage you to stop negotiating on areas that we have clearly stated are non negotiable.

(*Id.* ¶ 49) (emphasis in original omitted.) Optimer Inc.'s in-house lawyer, Kurt Harman, "insisted" OBI BOD Chairman Dr. Michael Chang "delay the OBI IPO if OBI resisted signing the ROFR." (*Id.* ¶ 51.)

On February 1, 2012, Optimer Inc. and OBI, through their respective representatives, executed an agreement "for OBI to license certain patents and know-how to [Optimer Inc.] concerning [the Compound]," as well as a ROFR regarding the right to exclusively license the Compound. (*Id.* ¶ 53.) However, Dr. McKinnell decided the ROFR was not sufficient. (*Id.* ¶ 54.) "Optimer and Mr. Lichtinger were clearly angry" with Plaintiff for his role in negotiating alternative ROFR terms, and thereafter, "Dr.

4

McKinnell and Mr. Lichtinger began a campaign of retaliation and intimidation against" Plaintiff culminating in his termination from Optimer Inc. on April 6, 2012. (*Id.* ¶¶ 54-60.)

## PROCEDURAL HISTORY

On June 29, 2015, Plaintiff filed his initial Complaint in the Superior Court of the State of California for the County of San Diego asserting thirteen state law claims under theories of breach of contract, negligent misrepresentation, discrimination, and whistleblower retaliation. (Docket No. 1-3, Ex. A.) On October 14, 2016, Defendants removed the action to this Court. (Docket No. 1.) On October 21, 2016, Defendants filed a motion to dismiss Plaintiff's Complaint. (Docket No. 4.) Instead of filing an opposition, on November 11, 2016 Plaintiff filed the operative FAC asserting seventeen claims under the same theories. (Docket No. 7.) Defendants withdrew their previous motion to dismiss (Docket No. 9), and now move to dismiss portions of the FAC on two independent grounds: 1) lack of personal jurisdiction over Defendant Merck,[4] and 2) failure to state a claim as to certain claims for relief.

## DISCUSSION

### I. MOTION TO DISMISS DEFENDANT MERCK FOR LACK OF PERSONAL JURISDICTION

Defendants move to dismiss Defendant Merck from the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[5] On a Rule 12(b)(2) motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*,

---

[4] Defendants' motion initially asserted that the Court also lacked personal jurisdiction over Defendant Cubist. (Mot. to Dismiss at 11-13.) However, in their reply briefing, Defendants withdrew their motion to dismiss for lack of jurisdiction as to Cubist only, and reserved their right to reassert this issue at a later stage. (Docket No. 2 at 2, fn. 1.)

[5] All references to Rules in this Order are to the Federal Rules of Civil Procedure unless otherwise stated.

5

704 F.3d 668, 671-72 (2012). Where the motion is based on written materials and affidavits rather than an evidentiary hearing, a plaintiff is only required to make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). In determining whether a plaintiff has met her burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588–89 (9th Cir. 1996) (quoting *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) (internal citations omitted)).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations omitted). California's long-arm statute permits its courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (quoting Cal. Civ. Proc. Code § 410.10). Thus, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," and the Court must ensure that its assertion of personal jurisdiction over a party comports with the limits imposed by federal due process. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)). Due process requires that nonresident defendants have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

Defendants argue that Plaintiff has not met his burden to show that this Court has either specific or general jurisdiction over Defendant Merck. The Court agrees.

**A.   Specific Jurisdiction**

"In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler*, 134 S. Ct. at 754) (internal quotation marks omitted and emphasis added in original); *see also Burger King,* 471 U.S. at 472–473; *Helicopteros,* 466 U.S. at 414. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear,* 564 U.S., at 919) (internal quotation marks and brackets omitted in original). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (internal quotation marks omitted in original).

The FAC is devoid of any allegations to indicate that Merck conducts any business in California or that any of Plaintiff's claims arise out of Merck's activities in California. Although Plaintiff asserts in his opposition that Merck may have "at least one office in California, and advertises jobs in California," he does not discuss at all whether or to what extent Merck has purposefully availed itself of the privileges in California. More importantly, Plaintiff's opposition and supporting affidavits lack any briefing whatsoever on how Merck's activities in California, if any, gave rise to Plaintiff's claims. In short, Plaintiff has not met his burden to state a prima facie case for specific jurisdiction over Merck.

**B.   General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the

7

forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317); *see also Daimler*, 134 S. Ct. at 761 (same). The Supreme Court in *Daimler* recently stated that "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. When the defendant is a corporation, "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Id.* (internal citation omitted). "Outside of these paradigm bases, only 'in an exceptional case' should a court find a corporation's operations in the forum to be so substantial and of such a nature as to render the corporation at home in that State.'" *Fighter's Mkt., Inc. v. Champion Courage LLC*, 207 F. Supp. 3d 1145, 1150 (S.D. Cal. 2016) (quoting *Daimler* at 761, n. 19.)

Again, Plaintiff's showing is lacking. As noted above, Plaintiff did not include any factual allegations in his FAC that Merck conducts any business in California or that any of his claims arise out of Merck's activities in California. Even if the Court assumes Merck maintains an office in California and advertises for employment in California, without additional facts to indicate what activities Merck conducts in California, the Court cannot determine whether such activities are so "'continuous and systematic' as to render them essentially at home" in California to satisfy due process. *Daimler*, 134 S. Ct. at 761. Therefore, Plaintiff has also failed to present a compelling prima facie showing for the Court's general jurisdiction over Merck.[6]

Accordingly, having found both specific and general jurisdiction lacking, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction over Merck.

C. **Jurisdictional Discovery**

Lastly, Plaintiff's opposition requests leave to conduct jurisdictional discovery if the Court finds he failed to make a prima facie case for personal jurisdiction over Merck.

---

[6] To the extent Plaintiff appears to attempt to assert "representative services" and "alter ego" theories to support a finding of jurisdiction, the Court agrees with Defendants that *Daimler* controls.

"Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *In re Infosonics Corp. Derivative Litig.*, No. 06CV1336BTMWMC, 2007 WL 951296, at *2 (S.D. Cal. Mar. 21, 2007) (quoting *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)) (internal citation omitted). A district court has "broad discretion to permit or deny discovery." *Id.* A district court properly exercises its discretion to deny jurisdiction discovery where a plaintiff's personal jurisdiction claim "appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Id.* (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995).

Here, Plaintiff's personal jurisdiction claim is based on less than bare allegations. The only references to Merck in the FAC are to substitute Merck with a Doe defendant, to allege that Merck "acquired the entire equity interest" in Defendant Cubist, and to allege that "[o]n information and belief," Merck "constituted a mere continuation" of the other defendants. (FAC ¶¶ 6-7, 12.) The Court finds Plaintiff's opposition and supporting affidavits lack an indicia that jurisdictional discovery is warranted. Therefore, Plaintiff's request for leave to conduct discovery is denied. However, the Court grants Plaintiff leave to amend his complaint to allege facts to support a prima facie case for personal jurisdiction against Merck.

## II. MOTION FOR PARTIAL DISMISSAL OF CLAIMS IN PLAINTIFF'S FAC

Defendants next move to dismiss Plaintiff's claims for breach of contract (Claims 1-6), promissory fraud and negligent misrepresentation (Claims 7-8), and whistleblower retaliation under California Labor Code § 1102.5 (Claims 13-14) for failure to state a claim pursuant to Rule 12(b)(6).

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

9

misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)). On the other hand, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 664.

The Court agrees with Defendants that Plaintiff has failed to state a claim for each of the challenged claims.

## A. Breach of Contract Claims

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015) (quoting *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)).

Plaintiff's FAC alleges six breach of contract claims, which he claims arise from two separate contracts with Optimer Inc. The First, Second, and Third Claims are based on disputed terms in Plaintiff's employment contract with Optimer Inc. The Fourth, Fifth, and Sixth Claims are based on an alleged unilateral contract for shares of OBI stock, under which Plaintiff asserts Optimer Inc. failed to perform. Defendants move to dismiss each of these claims on the grounds that Plaintiff has not alleged sufficient facts to state a claim. Plaintiff contends the FAC's allegations are sufficient to state each of his breach of contract claims. The Court disagrees.

1. Employment Contract Claims

California Labor Code § 2922 "establishes the presumption that an employer may terminate its employees at will, for any or no reason. A fortiori, the employer may act peremptorily, arbitrarily, or inconsistently, without providing specific protections such as prior warning, fair procedures, objective evaluation, or preferential reassignment." *Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal. App. 4th 33, 37 (2001) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 350 (2000)) (internal quotation marks omitted). However, "[t]his presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 664 (1988) (citing *Strauss v. A. L. Randall Co.*, 144 Cal. App. 3d 514, 517 (1983); *Drzewiecki v. H & R Block, Inc.*, 24 Cal. App. 3d 695, 703 (1972)).

Plaintiff's First, Second, and Third Claims are for breach of contract, breach of implied-in-fact contract, and breach of the covenant of good faith and fair dealing, respectively. All of these claims are based upon the terms of his employment contract with Optimer Inc., which he alleges "was partly written, partly oral, and partly implied by conduct." (FAC ¶¶ 114, 139, 146.) Plaintiff avers that the contract "was to provide a long career for [Plaintiff] with a work environment free of business practices, harassment, discrimination and retaliation, free from violations of law, labor code violations, and unequal treatment and/or harassive [sic] behavior, and not to terminate his employment as long as his performance was satisfactory." (*Id.*) According to the FAC, Optimer Inc. breached their agreement when it wrongfully terminated him. The Court finds Plaintiff has not stated facts to overcome the presumption that his employment with Optimer Inc. was at-will such that he could not be terminated without good cause.

First, Plaintiff did not identify in his FAC which of these terms were reduced to a writing, or when. Notably, Plaintiff also does not assert, in either the FAC or his opposition, that when his employment with Optimer Inc. first began, he was not at-will. Moreover, in his opposition, Plaintiff only vaguely asserts that "promises were made in writing to the Plaintiff by Defendant [Optimer Inc.] subsequent to his initial employment

11

in 2000 that materially altered the terms of his employment." (Pl.'s Opp'n at 8.) This is not sufficient to state a claim for breach of a written contract.[7]

Second, Plaintiff's allegations regarding the terms of an oral employment contract are similarly deficient. Plaintiff alleges Dr. Chang "repeatedly assured the Plaintiff that they would be 'partners to the end.'" (FAC ¶ 117.) This is the only specific allegation regarding Optimer Inc.'s oral promise not to terminate him for cause. Plaintiff does not identify the time, place, or give any other context from which the Court may draw a reasonable inference that Dr. Chang, on behalf of Optimer Inc., intended this statement to convey a promise to Plaintiff that he would only be terminated for cause.

Finally, the FAC also lacks factual allegations to state a claim for breach of an implied employment contract. In California, courts consider the following factors when evaluating whether an implied contract not to terminate for cause exists: 1) the personnel policies or practices of the employer, 2) the employee's longevity of service, 3) actions or communications by the employer reflecting assurances of continued employment, and 4) the practices of the industry in which the employee is engaged. *Guz*, 24 Cal. 4th at 336–37 (citing *Foley*, 47 Cal. 3d at 680) (internal citation omitted). These factors are examined under the totality of the circumstances, "to determine whether the parties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract limiting the employer's termination rights." *Id.* at 337 (citing *Foley* at 681). However, each case "turns on its own facts," and not every "vague combination of *Foley* factors, shaken together in a bag, necessarily allows a finding that the employee had a right to be discharged only for good cause." *Id.*

---

[7] To the extent Plaintiff appears to assert an independent claim that Optimer Inc. breached its obligation to provide him with a severance package upon his involuntary termination (*see* FAC ¶¶ 120-122; Pl.'s Opp'n at 8-9.), this appears to flow from his wrongful termination claims. These allegations would be appropriately considered when determining the amount of damages to be awarded, should Plaintiff prevail on one or more his other wrongful termination claims.

12

According to the FAC, during the twelve years Plaintiff was employed with Optimer Inc., he received from its "supervisorial agents explicit and implicit assurances of continued employment absent good cause for his termination." (FAC ¶ 136.) Yet the only "supervisorial agent" Plaintiff identifies is Dr. Chang, who told him "they would be 'partners to the end.'" (*Id.* ¶ 136.) As noted above, Plaintiff did not offer any context for Dr. Chang's statement, nor did Plaintiff allege any facts regarding the implicit assurances he claimed to have received. Similarly, Plaintiff asserts he "had a personal understanding that he would be permitted to remain in his position with [Optimer Inc.] and OBI as long as he did not engage in any misconduct that would justify termination for cause." (*Id.* ¶ 138.) But he does not include any *facts* to support his personal understanding.

Plaintiff's FAC does contain factual allegations demonstrating Plaintiff's longevity of service and positive performance reviews, but these factors alone are not sufficient to state a plausible claim for the existence of an implied contract. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 713–14 (N.D. Cal. 2014); *see also Guz*, 24 Cal. 4th at 341-42 ("[A]n employee's mere passage of time in the employer's service, even where marked with tangible indicia that the employer approves the employee's work, cannot alone form an implied-in-fact contract that the employee is no longer at will. Absent other evidence of the employer's intent, longevity, raises and promotions are their own rewards for the employee's continuing valued service; they do not, in and of themselves, additionally constitute a contractual guarantee of future employment security."). Thus, Plaintiff has failed to state a claim for breach of an implied employment contract.

As a result, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing because "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Foley*, 47 Cal.3d at 684; *see also Landucci*, 65 F. Supp. 3d at 715 (granting motion to dismiss implied covenant claim after concluding the plaintiff failed to allege she had an implied contract for permanent employment).

To sum up, Plaintiff has failed to state a claim for each of his breach of employment claims. Accordingly, the Court **GRANTS** Defendants' motion to dismiss the First, Second, and Third Claims for Relief.

        2.      <u>Unilateral Contract Claims</u>

Plaintiff's Fourth, Fifth and Sixth Claims arise out of Plaintiff's assertion that he and Optimer Inc. entered into a unilateral contract, whereby Optimer Inc. "specifically represented to [Plaintiff] that he would be awarded 600,000 shares of OBI common stock payable within 30 days of OBI's IPO date, provided that the Plaintiff was still providing "Continuous Service" on the IPO date, and that the IPO date was prior to December 13, 2012." (FAC ¶¶ 153, 162, 173.)

Under California law, "[a] unilateral contract is one in which there is only one promisor. Any act or forbearance by the promisee may constitute consideration for the promise and acceptance of the offer." *Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal. App. 4th 726, 740 (2012). The Court finds the FAC fails to allege specific facts to indicate the existence of an independent contract for the stock grant. Rather, as alleged, it appears Plaintiff's unilateral contract claims necessarily flow from his wrongful termination claims, and would be more properly evaluated in determining an award of damages if Plaintiff prevails on one or more of his wrongful termination claims. Therefore, the Court **GRANTS** Defendants' motion to dismiss the Fourth, Fifth and Sixth Claims for Relief.

**B.    Promissory Fraud and Negligent Misrepresentation Claims**

"Under California law, [t]he elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Gross v. Metro. Life Ins. Co., N.Y., N.Y.*, No. 12-CV-2478 H JMA, 2013 WL 1628138, at *3 (S.D. Cal. Apr. 12, 2013) (quoting *Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009)) (internal

14

quotation marks omitted). "'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.'" *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (applying the elements of fraud and deceit to promissory fraud) (citations omitted).

Contrary to Plaintiff's assertion otherwise, "[i]t is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Fernandes v. TW Telecom Holdings, Inc.*, No. 215CV01976TLNCKD, 2016 WL 704723, at *7 (E.D. Cal. Feb. 23, 2016) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). "In order to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989))

Here, Plaintiff alleges that on September 14, 2011, when Optimer Inc. "issued a written grant of 600,000 shares of OBI common stock" that was contingent upon Plaintiff being continually employed with Optimer Inc. on OBI's IPO date, it knew that it would not deliver, or had no intention to deliver, the promised stock to Plaintiff. (FAC ¶¶ 181-189, 192-199.) However, even if the Court assumes that Optimer Inc. promised Plaintiff the shares under the circumstances alleged, Plaintiff offers no factual allegations to indicate that Optimer Inc. knew it was making a false promise and/or it had no intention of performance. Indeed, Plaintiff's scienter allegations assert that Optimer Inc.'s animus toward him began in October 2011, one month after the stock was granted.

In sum, Plaintiff has not met his initial pleading burden as to his promissory estoppel and negligent misrepresentation claims. As a result, Defendant's motion to dismiss the Seventh and Eight Claims for Relief is **GRANTED**.

///

///

## C. California Labor Code § 1102.5 Claims

California Labor Code § 1102.5[8] is a "whistleblower" statute; its purpose is to protect employees from retaliation for reporting violations of state or federal law and regulations. *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 76-77 (1998). In order to establish a prima facie case of retaliation under this statute, the employee must show: (1) he or she engaged in protected activity, (2) the employer subjected the employee to adverse employment action, and (3) a causal link between the two. *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 1007-08 (E.D. Cal. 2016).

As a preliminary matter, the Court notes that the parties dispute which version of § 1102.5 applies to Plaintiff's claims. The California Legislature amended § 1102.5 twice since Plaintiff's termination from Optimer Inc. on April 6, 2012: first in 2013 (effective January 1, 2014), and again in 2015 (effective January 1, 2016). The Court only considers the 2013 amendment because it changed the language in § 1102.5(a)-(c), upon which Plaintiff bases his Thirteenth and Fourteenth Claims, and the 2016 amendment left these subdivisions unchanged. *Compare* Cal. Lab. Code § 1102.5(a)-(c) (effective January 1, 2016) and Cal. Lab. Code § 1102.5(a)-(c) (effective January 1, 2014 to December 31, 2015).

Before the 2013 amendment to § 1102.5(a)-(b) (Plaintiff's Thirteenth Claim), "only complaints or reports made to a governmental agency are protected; complaints or reports made 'internally' to the employer are not protected." *Robles*, 158 F. Supp. 3d at 1008 (citing *Green*, 19 Cal. 4th at 76-77) (§ 1102.5 . . . "concerns employees who report to public agencies. It does not protect plaintiff, who reported his suspicions directly to his employer."). In contrast, after the 2013 amendment, protected conduct included internal complaints to an employee's employer. *Compare* Cal. Lab. Code § 1102.5(a)-(b) (effective January 1, 2014 to December 31, 2015) and Cal. Lab. Code § 1102.5(a)-(b)

---

[8] All further references in this section are to the California Labor Code unless otherwise specified.

16

(effective January 1, 2004 to December 31, 2013). Here, the FAC only alleges Plaintiff reported internally, and Plaintiff's opposition appears to admit Plaintiff did not report to a government agency. Thus, whether Plaintiff can maintain his claim for whistleblower retaliation under § 1102.5(a)-(b) turns on retroactive application of the statute.

"It is a 'well-established presumption [that] statutes apply prospectively in the absence of a clearly expressed contrary intent . . . [.]" *Tobin v. City & Cnty. of San Francisco Police Dep't*, No. 13-CV-01504-MEJ, 2015 WL 1885632, at *4 (N.D. Cal. Apr. 24, 2015) (quoting *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 230 (2006)). "This presumption applies to the California Labor Code." *Id.* (citing *Aetna Cas. & Surety Co. v. Ind. Acc. Com.*, 30 Cal. 2d 388, 395 (1947)).

Contrary to Plaintiff's assertion, the 2013 amendment to § 1102.5(a)-(c) did not "merely clarif[y] to whom the report may be made." (Pl.'s Opp'n at 21.) A plain commonsense comparative reading of the versions of the statutes indicates that the 2013 amendment effectuated a change in the law – that is, broadening the scope of protected activity to include internal reporting. *See Robles*, 158 F. Supp. 3d at 1008. In short, the 2013 amendment does not apply retroactively. *See Tobin*, 2015 WL 1885632, at *4. As a result, Plaintiff has failed to state an element of his § 1102.5(a)-(b) claim: reporting to a government agency. Accordingly, Defendants' motion to dismiss the Thirteenth Claim for Relief is **GRANTED**.

As to Plaintiff's Fourteenth Claim for Relief for violation of § 1102.5(c), the Court also finds Plaintiff's pleading insufficient to state a claim. § 1102.5(c) provides:

> An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Lab. Code § 1102.5(c) (effective January 1, 2004 to December 31, 2013).

According to the FAC, Optimer Inc. retaliated against him for refusing to potentially violate his fiduciary duty to OBI's minority shareholders. (FAC ¶¶ 249-257.) Plaintiff alleges Optimer Inc.'s first retaliatory acts occurred in February 2012, when it

17

removed him from its policy-making executive committee and advised him that he was no longer a "Section 16 Individual."[9] (Id. ¶¶ 55, 257.) However, Plaintiff does not allege facts from which the Court may infer that such an act was retaliatory such that Plaintiff suffered any damages. For example, Plaintiff has not alleged whether such acts resulted in a loss of earnings. Indeed, Plaintiff admits that he "retained his title as Vice President of Clinical Development, and some of his core functions in that capacity." (Id. ¶ 56.)

Plaintiff next alleges that Optimer Inc. "subject[ed] [him], with the implied threat of the loss of his job, to a series of three 'interviews' on March 23, 2012, March 29, 2012, and April 3, 2012 regarding [its] investigation of Dr. Chang." (Id. ¶¶ 58, 257.) But Plaintiff has not sufficiently alleged how his own employer's requirement that he participate in the investigation of another employee can be considered a retaliatory act, even assuming there was an implied threat of loss of his job. An employer's request for an employee to participate in one or more interviews as part of a workplace misconduct investigation is not an uncommon business practice or a *per se* retaliatory act. Additionally, it is not clear from the face of the FAC what damages Plaintiff suffered from participation in the investigation.

Lastly, Plaintiff alleges "[t]he ultimate retaliation occurred when Mr. Hartman telephoned [him] on April 6, 2012, to inform [him] that he was terminated 'for cause.'" (Id. ¶ 257.) But Plaintiff lacks factual allegations connecting his termination with his negotiation of the ROFR in October 2011 or February 2012. Instead, Plaintiff merely asserts, in a conclusory fashion, that "[b]ut for [his] objection and resistance to [Optimer Inc.'s] breaches of its fiduciary duty to OBI, he would not have been wrongfully

---

[9] According to the FAC, a "Section 16 Individual" is a person who is "directly or indirectly the beneficial owner of more than 10% of the company, or who is a director or an officer of the issuer of such a security. Plaintiff alleges that such individuals "must file the statements required by this subsection with the SEC," but it is not clear what subsection is being referenced.

terminated." (*Id.* ¶ 244.) This is not sufficient to state a claim under § 1102.5(c). Therefore, Defendants' motion to dismiss Plaintiff's Fourteenth Claim for Relief is **GRANTED**.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Defendant Merck for lack of jurisdiction is **GRANTED**. Defendant Merck is **DISMISSED without prejudice** from the action. Additionally, Defendants' motion for partial dismissal is **GRANTED**. Claims 1-8, and 13-14 are **DISMISSED without prejudice**. Plaintiff's request for jurisdictional discovery is denied, but Plaintiff is granted leave to file a second amended complaint (SAC) to allege a prima facie case for personal jurisdiction over Merck as well as correct the deficiencies identified in this Order. If Plaintiff elects to file a SAC, he must do so within **seven (7) days** of the date of this Order.

**IT IS SO ORDERED.**

DATED: July 31, 2017

HON. ROGER T. BENITEZ
United States District Judge