UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUE-KONG SHUE,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>OPTIMER PHARMACEUTICALS, INC.,<br>a Delaware Corporation, et. al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:16-cv-02566-BEN-JLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF SECOND AMENDED COMPLAINT** |

This action arises out of the alleged wrongful termination of Plaintiff Yong-Kong Shue by Defendant Optimer Pharmaceuticals, Inc. ("Optimer Inc."). Before the Court is the motion for partial dismissal of Plaintiff's Second Amended Complaint filed by Defendants Cubist Pharmaceuticals, LLC and Optimer Pharmaceuticals, LLC. The motion fully briefed. For the reasons that follow, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiff's Second Amended Complaint ("SAC") contains largely the same factual allegations as the First Amended Complaint, which the Court summarized in detail in its *August 1, 2017 Order* and now incorporates by reference. (*See* Docket No. 14 at pp. 2-5.) New allegations will be discussed where relevant to the Court's analysis of Defendants' motion to dismiss.

///

## PROCEDURAL HISTORY

On June 29, 2015, Plaintiff filed his initial Complaint in the Superior Court of California for the County of San Diego asserting thirteen state law claims under theories of breach of contract, negligent misrepresentation, discrimination, and whistleblower retaliation. (Docket No. 1-3, Ex. A.) On October 14, 2016, Defendants removed the action to this Court. (Docket No. 1.) After Defendants filed a motion for partial dismissal of his initial Complaint (Docket No. 5), Plaintiff exercised his right pursuant to Federal Rule of Civil Procedure 15(a)(1) and filed a First Amended Complaint on November 11, 2016, asserting seventeen claims for relief under generally the same theories of liability. (Docket No. 7.) On August 1, 2017, this Court granted Defendants' motion for partial dismissal of Plaintiff's claims for breach of employment contract, promissory fraud, negligent misrepresentation, and whistleblower retaliation, and granted Plaintiff leave to amend these claims. (Docket No. 14.)

On August 7, 2017, Plaintiff filed the operative Second Amended Complaint. (Docket No. 15.) The SAC asserts eleven claims for relief, under theories of breach of contract, discrimination, and whistleblower retaliation. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's amended breach of contract (Claims 1-3) and whistleblower retaliation (Claim 8) claims.

## DISCUSSION

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

When considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v.*

2

*Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)). On the other hand, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 664.

### A. Breach of Contract Claims

To state a breach of contract claim, a plaintiff must plausibly allege facts to establish the following four elements: "(1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages as a result of the breach." *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015) (quoting *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)).

Once again, the Court finds Plaintiff has failed to state a claim for each of his breach of contract claims.

#### 1. Breach of Employment Contract Claims

Plaintiff's First Amended Complaint advanced six breach of contract claims based on two separate contracts, one for Plaintiff's employment, and one for a grant of OBI[1] shares, all of which were dismissed for failure to state a claim. *See August 1, 2017 Order* at pp. 10-15. The SAC appears to consolidate five of those claims into the First and Second Claims for breach of contract and breach of implied-in-fact contract, respectively, again relying on mostly the same allegations pled in the First Amended Complaint. With the exception of the paragraph numbers, Plaintiff's SAC sets forth identical allegations as his First Amended Complaint for his Third Claim for breach of the covenant of good

///

---

[1] Plaintiff alleges OBI is a "registered Taiwanese Company, and a wholly-owned subsidiary" of Optimer Inc. (SAC ¶ 23.)

3

faith and fair dealing, which is predicated on his alleged employment contract. (*Compare* Docket No. 7 at ¶¶ 145-151 & SAC ¶¶ 159-165.) The new pertinent allegations are:

> - Plaintiff "entered a written Employee Proprietary Agreement on or about June 16, 2000, pursuant to which he had at-will status." (SAC ¶ 118.)
>
> - Between 2000 and 2005, Plaintiff "periodically questioned Co-founder Dr. Chang about his employment status." (*Id.* ¶¶ 119, 146.)
>
> - In 2005, during Plaintiff's annual evaluation, Dr. Chang told Plaintiff "they would be 'partners to the end'" out of concern that Plaintiff may be recruited by other companies. (*Id.*) "These exchanges continued to take place over the next several years," during which "Dr. Chang also promised PLAINTIFF that he would share in the success of the business and reap the benefits of its success." (*Id.*)
>
> - "In the pharmaceutical business, due to the many years needed to continue research on drugs before and after it is approved, many pharmaceutical companies do not terminate researchers or their management, as long as they are doing their job. This policy was particularly true at [Optimer Inc.] where as Director of Chemistry and V.P. of Clinical Affairs for over 12 years, PLAINTIFF never terminated anyone in the research department." (*Id.* ¶¶ 121, 148.)

As the Court explained in its prior Order, California Labor Code § 2922 "establishes the presumption that an employer may terminate its employees at will, for any or no reason. A fortiori, the employer may act peremptorily, arbitrarily, or inconsistently, without providing specific protections such as prior warning, fair procedures, objective evaluation, or preferential reassignment." *Starzynski* v. *Capital Pub. Radio, Inc.*, 88 Cal. App. 4th 33, 37 (2001) (quoting *Guz* v. *Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 350 (2000)) (internal quotation marks omitted). This presumption "may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee." *Foley* v. *Interactive Data Corp.*, 47 Cal. 3d 654, 664 (1988) (citing

4

*Strauss* v. *A. L. Randall Co.*, 144 Cal. App. 3d 514, 517 (1983); *Drzewiecki* v. *H & R Block, Inc.*, 24 Cal. App. 3d 695, 703 (1972)).

Here, Plaintiff's SAC now *admits* that when he commenced his employment with Optimer Inc., "he had at-will status." (SAC ¶ 118.) As a result, to survive Defendants' motion to dismiss, the SAC must sufficiently allege facts to plausibly establish that his at-will employment contract changed to a termination for cause employment contract. *Iqbal*, 556 U.S. at 677-78. It does not.

Like the First Amended Complaint, the SAC alleges Plaintiff's termination for cause employment contract was "partly written, partly oral, and partly implied by conduct." (*Id.* ¶¶ 122, 149, 160.) However, the only written employment contract referenced in the SAC is the "Employee Proprietary Information Agreement" that he alleges established his at-will status.[2] (*Id.* ¶ 118.)

As to the "partly oral, and partly implied by conduct" allegations, Plaintiff attempted to provide context to Dr. Chang's statement(s) that "they would be 'partners to the end,'" but the newly alleged facts remain insufficient to plausibly overcome the at-will presumption. First, Plaintiff's allegations regarding Dr. Chang's concern about Plaintiff's potential recruitment by other companies are not persuasive. It is not uncommon for employers to be concerned that their talent may be poached by other companies.[3] In some instances, motivated by this concern, an employer might convey more attractive employment terms, such as offering permanent employment on a termination for-cause only basis, in order to retain these valuable employees. But

---

[2] The Court reiterates its earlier determination that inasmuch as Plaintiff attempts to reassert an independent claim that Optimer Inc. breached its obligation to provide him with a severance package upon his involuntary termination (*see* SAC ¶¶ 127-129), this still appears to flow from his wrongful termination claims, and thus would appropriately be considered when determining the amount of damages to be awarded if Plaintiff prevails on one or more of those claims. *See August 1, 2017 Order* at p. 12 n.7.

[3] Indeed, the SAC specifically alleges Dr. Chang "recruited away" Plaintiff from AstraZeneca. (SAC ¶ 19).

5

Plaintiff's allegations do not come close to establishing Optimer Inc.'s conveyance of such a promise. Simply put, the Court is not able to draw a reasonable inference that Dr. Chang, on behalf of Optimer Inc., intended to convey a promise to Plaintiff that he would only be terminated for cause based on the SAC's allegations.

Second and similarly, that Plaintiff continually questioned Dr. Chang about the status of his employment, without more, does not by itself establish Dr. Chang's intent to convey a promise of permanent employment when he said they would be "partners to the end." (*See* SAC ¶ 24.) Indeed, the fact that Plaintiff felt compelled to keep asking about his employment status suggests such a promise was not conveyed. Third, Plaintiff's conclusory allegation that he had a "personal understanding" with Dr. Chang that "he would be permitted to remain in his position with OPTIMER [Inc.] and OBI as long as he did not engage in any misconduct that would justify termination for cause" is equally insufficient to plausibly rebut the at-will presumption. (*Id.* ¶ 152.) There is simply a dearth of factual allegations from which the Court may draw this inference.

Fourth, the mere fact that the pharmaceutical industry may have an industry practice of not terminating researchers and management without cause does not, in it of itself, plausibly describe Optimer Inc.'s intention to change Plaintiff's admittedly at-will employment status. The Court finds the remaining arguments raised in Plaintiff's opposition to Defendants' motion unconvincing.

In sum, the Court finds Plaintiff failed to correct the deficiencies it identified in its *August 1, 2017 Order* regarding his breach of employment contract claims.

        2.    Breach of Indemnification Agreement

Buried in three paragraphs of Plaintiff's SAC are new factual allegations that Optimer Inc. breached an indemnification contract between it and Plaintiff. (*See* SAC ¶¶ 134-136.) In short, Plaintiff alleges that on October 23, 2006, he and Optimer Inc. agreed to the terms of the "Optimer Pharmaceuticals, Inc. Indemnification Agreement" ("Indemnification Agreement"), whereby Optimer Inc. promised to reimburse Plaintiff for "necessary expenditures, including attorneys' fees" related to the discharging of his

6

duties as an Optimer Inc. officer. (*Id.* ¶ 134.) Plaintiff further alleges that he spent approximately $20,000 in attorneys' fees related to a February 29, 2012 Department of Justice investigation, that were part of his duties as an Optimer Inc. officer, but he has yet to be reimbursed for those fees. (*Id.* ¶¶ 134-136.) However, Plaintiff also alleged that he was demoted from his status as an officer on February 9, 2012, *i.e.*, prior to the date of the investigation. (*Id.* ¶ 94.)

Assuming these allegations are true, and drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has failed to state a plausible claim for breach of the Indemnification Agreement because his own allegations indicate he was not entitled to reimbursement for his attorneys' fees on the date he allegedly incurred them. (*Id.* ¶¶ 94, 134-136.)

Thus, because the Court finds Plaintiff has failed to state a claim for his First, Second, and Third Claims for Relief, Defendants' motion to dismiss these claims is **GRANTED**.

**B.     California Labor Code § 1102.5 Claim**

Plaintiff's Eighth Claim for Relief reasserts the First Amended Complaint's Fourteenth Claim for violation of California Labor Code § 1102.5(c). Under § 1102.5(c), "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state of federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(c) (effective January 1, 2004 to December 31, 2013).

The SAC essentially repackages as new the same factual allegations as the First Amended Complaint, *i.e.*, that Optimer Inc. retaliated against him for refusing to potentially violate his fiduciary duty to OBI's minority shareholders by negotiating for better terms for a Right of First Refusal ("ROFR") for OBI's OPT-822/821 Compound (the "Compound"). (SAC ¶¶ 199-208.)

The first retaliatory act allegedly occurred in January or February 2012, when Optimer Inc. removed him from the policy-making executive committee and took away

his status as an Optimer Inc. Executive Officer. (*Id.* ¶¶ 209, 211.) But Plaintiff still fails to allege facts to plausibly suggest this act was retaliatory. Indeed, Plaintiff repeats his allegation that he "retained his title as Vice President of Clinical Development, and some of his core functions in that capacity." (*Id.* ¶ 211.) The SAC also acknowledges that Optimer Inc. explained that it wanted Plaintiff to "focus more on performing his functions and status as a CEO of OBI." (*Id.*) Rather than include specific facts to establish a plausible inference of retaliatory intent, Plaintiff merely asserts his own conclusion that the alleged demotion Optimer Inc.'s purpose was to prevent him from "obtaining his $400,000 severance package." (*Id.* ¶¶ 211, 216)

Moreover, Plaintiff did not allege any new facts to indicate how Optimer Inc.'s requirement that he participate in three "interviews" for an investigation of another employee can plausibly be considered a retaliatory act. *See August 1, 2017 Order* at p. 18. Nor did Plaintiff allege any new facts to support his claim that he was fired because of his attempts to negotiate for better ROFR terms for OBI.[4] *See id.* Instead, Plaintiff includes more accusations or legal conclusions, which the Court need not assume true.

Therefore, Defendants' motion to dismiss Plaintiff's Eighth Claim for relief is **GRANTED**.

### C. Plaintiff's Request for Leave to Amend

Plaintiff requests leave to amend if Defendants' motion is granted. In determining whether to grant leave, a court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

///

---

[4] Where Plaintiff has alleged new allegations, they do not appear relevant to establishing his claim. For example, some of the portions of the SAC related to the Eighth Claim discusses Defendants' alleged conduct against Dr. Chang or to Dr. Chang's wife in order to influence *Dr. Chang's* actions. (*See* SAC ¶¶ 206, 210.)

8

The Court finds Plaintiff has not shown good cause to grant leave to file a third amended complaint. First, Plaintiff's initial complaint was removed to this Court on October 14, 2016. (Docket No. 1.) Since then, Plaintiff has amended his complaint twice. (*See* Docket Nos. 7, 15.) Second, as discussed above, Plaintiffs' SAC failed to remedy the deficiencies identified by this Court in its August 1, 2017 Order granting Defendants' motion for partial dismissal of the same claims at issue in the instant motion. (Docket No. 14.) Third, Plaintiff did not identify any new facts that could cure the deficiencies, already identified by this Court, in a third amended complaint. As a result, Plaintiff has not shown "a reasonable possibility" that the defects could be cured by an amendment. *Blank v. Kirwan*, 39 Cal. 3d 311, 318 (1985). Fourth, contrary to Plaintiff's assertion, Defendants would be prejudiced if Plaintiff was allowed to file a third amended complaint – having now prevailed twice on their motions for partial dismissal of the same claims and without Plaintiff demonstrating the existence of new facts to justify amendment of his claims. Accordingly, Plaintiff's request for leave to amend is **DENIED**.

## CONCLUSION

For all of the aforementioned reasons, Defendant's motion for partial dismissal of Plaintiff's First, Second, Third and Eighth Claims is **GRANTED**, and these claims are **DISMISSED without leave to amend.**

**IT IS SO ORDERED.**

DATED: February 16, 2018

HON. ROGER T. BENITEZ
United States District Judge